WRIGHT, J.
The first question we are called to decide is, whether the deed of assignment is of legal validity to vest the assignees with the effects of the Reeds? The clause in the assignment relied upon to vitiate it is this: “Nevertheless this assignment is upon this express condition: all the creditors who shall accept and elect to receive the benefit of this assessment shall respectively present their demands to the said Fitch and Sawtell for payment within one year from this date, and on receiving from said Fitch and Sawtell a certificate of allowance, said creditors shall respectively give said William W. and James L. [Reed] a release and discharge in writing, of all demands and claims whatsoever against said firm. And if any balance shall remain in the hands of Fitch and Sawtell, after discharging all just demands tvhich shall be presented under this assignment, then said Fitch and Sawtell shall pay and discharge all demands against said firm ratably and proportionally so far as the same shall come to the knowledge of said Fitch & Sawtell.”
The Reeds owed much more than they had effects to pay, and were insolvent. They transferred the whole to these trustees, and thus placed them beyond the reach of legal process. Having completely out off their creditors from all hopes of payment, they address this langnage to them: If you will discharge us altogether from wdiatwe owe you, you may receive a distributive share of our effects; but if you refuse, you shall have nothing. It is fraudulent to use such means, addressed to the hopes and fears of creditors, to coerce from them a discharge of a debt, without payment of anything, or the possibility of receiving the amount due. The demand was to be exhibited within a year from the date of the assignment, and if *728 allowed by the assignees, a release was to be immediately executed,, though no dividend was to be made until the lapse of eighteen, months. Thus upon the contingent possibility of receiving some-703] *thing, without knowing how much, an honest creditor is to have extorted from him a total discharge of his demand, or be wholly-cut off. If this be not sheer fraud, we cannot readily see what-could be held fraud. But we are told that inasmuch as if no one comes in under the assignment, then the effects are to be distributed after deducting expenses, ratably among all the creditors. The assignment creates classes and puts it in the power of any portion to defeat the equal distribution. Thus each creditor of the first class that assents, makes certain his own chance of getting something, and diminishes the chance of all depending on the general' fund. 'The first class in this assignment are the domestic creditors, to pay whom and the expenses, there is probably effects sufficient, and leave a small balance for distribution among foreign creditors, to whom most is due, and who have the least opportunity to learn the true state of the effects, and their chance of getting anything. The domestic creditors can come in at the close of the limited time- and take their full pay, and leave those living out of the county with little or nothing. The neighbor of the debtor is operating with the debtor to coerce from the foreign creditor a discharge,, without pay. If he hold back until the last moment, the hope of an enlarged dividend may induce the creditor moro remote to become-party to the deed and release. If the neighbor become party, he-exerts the influence of his example in approving the arrangement and inducing the foreigner to sign. The proposition to the neighbors of the debtor is, if yon will aid me to obtain a discharge from my foreign creditors, I will pay you in full or distribute all my effects among you; while that to the foreign creditor is, if you will-discharge me altogether from your demands, I will apply all my effects, first to pay my neighbors, and if there is anything left give you your share of the remainder: if you will not do this you will get nothing. I cannot tell how much you will get, or whether anything, until six months after you execute the release. We cannot, as a court of equity, sustain such a proceeding: and we hold the assignment void against creditors not piarties to it, rqDon principles. heretofore decided: (5 O. 293.)
The trustees are not liable to the complainants for any of the-trust effects which were not in their hands at the service of the subpoena. As to the effects then in the hands of the assignees, they are liable to the defendant’s judgment. They were subject to- *729 levy on execution, if land, according to tlie priority of the judgment, and such lien is not affected by this suit; if goods and chattels, they were liable according to priority and levy — or they may be sold by *a decree of this court, and the application made under its [704 direction. Where resort is had to chancery to effect execution of ■a judgment at law, as in this case, the most diligent creditor gains priority as the reward of his diligence: (6 O. 156.) What effects therefore, were in the hands of the assignees when the subpoena was served, except lands bound by prior judgments, if therebeany such, deducting .reasonable expenses) are to be applied to the complainants’ judgment, as the most diligent creditors.-
Another question is presented as to the debts due the Reeds, 'which were assigned to the trustees to collect, and are still outstanding. Our law authorizes chancery to confiscate the debts of •a judgment debtor. Tbe bill in such case should of course make both judgment debtor and his debtor defendants, otherwise their respective rights cannot be ascertained and protected. The bill In this case, makes no debtor of the Reeds parties, and does not in terms seek to confiscate any of their debts. In bills for the confiscation of debts in satisfaction of judgments, the rule applies, which secures to the most diligent creditor a priority. The complainants not having proceeded against the debtors, have no claim ■upon the outstanding debts of Reeds, as against other creditors who have so proceeded. It is possible, there may be a difference as it regards negotiable paper, if there were any such transferred to the assignees, and we will leave that question open.
But it appears the complainants have other security fora part of their demand. They must account for- that before they are let in .to appropriate other effects. They can proceed here only for the real balance due them.
The case must go to a master to state the amount of the complainant’s demand, and the state of the security he received — the ■exact state and condition of the property assigned to the trustees, •and its value, with the cost and charges — what judgments exist against the Reeds, with the dates — whether any and what bills have "been filed to subject the effects and credits in the hands of the assignees, and for the coming in of the report and further proceedings, this cause is continued.